**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISAIAH HICKS,<br><br>Defendant. | NO. 1:08-CR-00401-1<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In 2012, Isaiah Hicks was sentenced to 30 years in federal prison for leading a drug-trafficking conspiracy that distributed large quantities of crack and powder cocaine, and for using a firearm in furtherance of the conspiracy. R. 1338, Sentencing J. at 1–3.[1] He now moves to reduce his sentence under the First Step Act of 2018, R. 1895, Def.'s Sentence Red. Mot., which permits certain criminal defendants to seek sentence reductions for crack cocaine offenses, *see* Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. Hicks also moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on post-sentencing changes in the law, certain medical problems, and his post-conviction rehabilitation. R. 2170, Def.'s First Comp. Release Mot.; R. 2171, Def.'s Second Comp. Release Mot. The government opposes the motions. R. 1907, Gov.'s Sentence Red. Resp.; R. 2182, Gov.'s Comp. Release Resp. The motions are denied.

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

In 2008, Hicks was indicted in a 27-defendant conspiracy to distribute crack and powder cocaine in the Chicago area. R. 230, Indictment at 1–3. The case went to trial in 2010. R. 684, 03/24/2010 Minute Entry. At trial, the evidence showed that Hicks led the conspiracy, coordinating the purchase of kilogram-quantities of crack and powder cocaine from suppliers and repackaging the cocaine into wholesale quantities. R. 1296, 03/24/2010 Tr. at 189:25–192:13, 193:10–194:14; R. 1297, 03/25/2010 Tr. at 316:14–18, 319:13–320:4. Hicks employed various "runners" who would deliver and sell the cocaine to customers. 03/24/2010 Tr. at 194:18–196:6; R. 1300, 03/29/2010 Tr. at 58:4–8. Hicks also possessed firearms to protect the conspiracy. 03/29/2010 Tr. at 23:3–24:10, 29:8–21; R. 1306, 04/06/2010 Tr. at 1323:2–17, 1335:7–13.

The jury found Hicks guilty of conspiracy to distribute, distribution, and possession with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of mixtures containing cocaine (i.e., powder cocaine). R. 608, Superseding Indictment at 1–2, 5, 12, 16, 20; R. 1337, 07/03/2012 Minute Entry. The jury also found Hicks guilty of possession of a firearm in furtherance of a drug trafficking crime. Superseding Indictment at 21; 07/03/2012 Minute Entry.

Hicks was sentenced in 2012. R. 1336, 07/03/2012 Minute Entry. Based on the quantities of crack and powder cocaine for which the jury found him responsible, and because he had prior felony drug convictions, R. 1356, PSR at 26, Hicks was subject to a statutory range of 20 years to life imprisonment for the drug offenses, 21 U.S.C. § 841(b)(1)(A) (2009). And because he used a firearm to protect the conspiracy, Hicks

was also subject to a mandatory consecutive five-year term of imprisonment. 18 U.S.C. § 924(c)(1)(A)(i).

In the presentence investigation report, the Probation Office found that Hicks distributed at least 44 kilograms of crack cocaine and 26 kilograms of powder cocaine through the conspiracy.[2] PSR at 18. Under the Sentencing Guidelines at the time, these quantities corresponded to a base offense level of 38. *Id.* Hicks received Guidelines enhancements for maintaining a premises to distribute a controlled substance (because he processed the cocaine in his apartment); knowingly involving a minor in the offense (because Hicks's minor cousin took part in the conspiracy); obstructing justice (because Hicks submitted a letter to the district court which claimed that several co-defendants purchased only marijuana from him, but those co-defendants pled guilty to dealing in crack cocaine as part of the conspiracy); committing the drug offenses as part of a pattern of criminal conduct engaged in as a livelihood; and leading the conspiracy. *Id.* at 18–20. Including the enhancements, Hicks's total offense level was 46. PSR at 21. Based on the offense level[3] and Hicks's extensive criminal history (he had 15 criminal history points and qualified as a career offender, giving him a criminal history score of VI), the Guidelines range was life imprisonment. PSR at 21–27, 39–40.

[2]Hicks objected to the drug-quantity finding, R. 1331, Def.'s PSR Obj. at 1, but the district court found that the quantity was adequately proven, R. 1513, 07/03/2012 Tr. at 2:17–3:9.

[3]Because the total offense level in the Sentencing Guidelines cannot exceed 43, the Guidelines range was automatically set at offense level 43. PSR at 39–40; *see also* U.S.S.G. ch. 5, pt. A, cmt. n.2.

The government recommended a sentence of at least 30 years. R. 1335, Gov.'s Resp. to Def.'s PSR Obj. at 5–6. Hicks requested a sentence of 20 years. Def.'s PSR Obj. at 9. He argued that the extreme abuse that he experienced as a child was a mitigating factor that justified a downward departure from the Guidelines. *Id.* at 6–9; 07/03/2012 Tr. at 9:16–10:23. The previously assigned judge acknowledged that Hicks's childhood was "among the worst" he had seen, and said that he believed Hicks was "capable of reform." 07/03/2012 Tr. at 11:12–24, 14:6–16. But the district court also emphasized the seriousness of the offense given the large quantities of cocaine distributed through the conspiracy. *Id.* at 13:5–25, 14:17–15:5. The district court thus sentenced Hicks to a below-Guidelines term of 30 years' imprisonment (25 years for the drug offenses and 5 years for the firearms offense). Sentencing J. at 3; 07/03/2012 Tr. at 15:6–18.

Hicks appealed, arguing that the 30-year sentence was substantively unreasonable. R. 1347, Appeal Notice; *United States v. Hicks*, No. 12-2665, R. 39, App. Br. at 6–11. But the Seventh Circuit affirmed the sentence, concluding that the district court did not abuse its discretion because it adequately considered Hicks's mitigation factors and even imposed a below-Guidelines sentence. *United States v. Long*, 748 F.3d 322, 332 (7th Cir. 2014). Hicks also argued that it was improper to apply an enhanced mandatory minimum based on his prior felony drug convictions because those convictions were not proven to the jury beyond a reasonable doubt. App. Br. at 11–12. The Seventh Circuit held that the enhanced mandatory minimum was

properly applied because the fact of a prior conviction need not be proved to the jury. *Long*, 748 F.3d at 328–39.

Hicks then filed a *pro se* motion for post-conviction relief under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel because his trial attorney failed to advise him about the advantages and disadvantages of a plea agreement. *United States v. Hicks*, No. 1:15-cv-03078 (N.D. Ill.), R. 1, Pet.'s Mot. ¶ 14. The district court denied the motion because there in fact was *no* plea negotiation in Hicks's case: the *government* never offered Hicks a plea agreement, and Hicks would have faced the same Guidelines range even if he had pled guilty with no agreement. *United States v. Hicks*, No. 1:15-cv-03078 (N.D. Ill.), R. 15, 05/23/2016 Op. at 1–2. Hicks appealed, and the Seventh Circuit affirmed. *Hicks v. United States*, 886 F.3d 648, 652 (7th Cir. 2018). Hicks then brought the current motions to reduce his sentence under the First Step Act and for compassionate release. *See* Def.'s Sentence Red. Mot.; Def.'s First Comp. Release Mot.; Def.'s Second Comp. Release Mot.

## II. Analysis

### A. First Step Act

Hicks moves to reduce his sentence under the First Step Act. Def.'s Sentence Red. Mot. "Drug-offense penalties under federal law depend in part on the weight and type of the drug at issue and in part on the defendant's prior convictions." *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020). Before August 2010, there were significant disparities in the statutory penalties for crack cocaine versus powder cocaine; for instance, a defendant who committed an offense involving 5 kilograms or

more of powder cocaine was subject to the same statutory range of imprisonment as a defendant who committed an offense involving only 50 grams or more of crack cocaine. *See* 21 U.S.C. § 841(b)(1)(A) (2009). Section 2 of the Fair Sentencing Act of 2010 reduced those disparities by increasing the quantity of crack cocaine required for each statutory penalty. *See* Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372. So now, a defendant who committed an offense involving 5 kilograms or more of powder cocaine is subject to the same statutory range of imprisonment as a defendant who committed an offense involving 280 grams or more of crack cocaine. *See* 21 U.S.C. § 841(b)(1)(A).

Initially, the Fair Sentencing Act did not apply retroactively. *Shaw*, 957 F.3d at 737. "Congress eventually addressed this deficiency when it passed the First Step Act of 2018," which "makes the Fair Sentencing Act retroactively applicable to defendants whose offenses were committed before August 3, 2010." *Id.* "A court that imposed a sentence for a covered offense may, on motion of the defendant, … impose a reduced sentence as if section[] 2 … of the Fair Sentencing Act of 2010 … [was] in effect at the time the covered offense was committed." First Step Act § 404(b). But the Court retains discretion over whether to ultimately grant a sentence reduction. *United States v. Fowowe*, 1 F.4th 522, 527 (7th Cir. 2021); *see* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Thus, the Seventh Circuit has outlined a two-step process for deciding a First Step Act motion: first, the Court must determine "whether the defendant is eligible for a sentence reduction." *United States v. Hudson*, 967 F.3d 605,

610 (7th Cir. 2020). Second, "[i]f the defendant is eligible, then the [C]ourt faces the question of whether it *should* reduce the sentence." *Id.* (emphasis in original).

At the first step, the parties agree that Hicks is eligible for a sentence reduction. *See* R. 1917, Def.'s Red. Reply at 2–5; R. 2182, Gov.'s Comp. Release Resp. at 18–19, 18 n.8. A defendant is eligible if he was convicted of a "covered offense." *Shaw*, 957 F.3d at 739–40. The First Step Act defines "covered offense" to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 … of the Fair Sentencing Act of 2010 …, that was committed before August 3, 2010." First Step Act § 404(a). And the Seventh Circuit has held "that the statute of conviction alone determines eligibility for First Step Act relief." *Shaw*, 957 F.3d at 739. Hicks is thus "eligible to seek relief under the First Step Act because [he] committed a crack-cocaine offense before August 3, 2010, and the penalty for … [that] crime[] was modified by the Fair Sentencing Act." *Id.* at 739–40.

The government initially argued that Hicks was ineligible because his drug offenses also involved powder cocaine, which triggered the same statutory range of imprisonment as the crack cocaine (and that statutory penalty remained unchanged by the Fair Sentencing Act). Gov.'s Sentence Red. Resp. at 9–12. But the government now concedes, based on the now-developed case law, that Hicks is eligible because "one of the objects of the conspiracy of which he was convicted was crack," regardless of the other drugs trafficked through the conspiracy. Gov.'s Comp. Release Resp. at 18 n.8 (first citing *Terry v. United States*, 593 U.S. 486 (2021); and then citing *United States v. McSwain*, 25 F.4th 533, 538 (7th Cir. 2022)); *see also United States v. Clay*,

50 F.4th 608, 611 (7th Cir. 2022) (noting "the emerging consensus" among circuit courts that "a conspiracy to traffic crack cocaine is a covered offense even if another object of the conspiracy triggered the same statutory penalty range" (cleaned up)).[4] The Court accepts the government's concession that Hicks is eligible for a sentence reduction at step one.

At the second step, the Court must exercise its discretion to determine whether Hicks *should* be granted a sentence reduction. *Hudson*, 967 F.3d at 610. "[A] district court ruling on a [First Step Act] motion … must begin by recalculating the statutory minimum and maximum that would have applied had [section 2] of the Fair Sentencing Act been in effect at the time the movant was originally convicted." *Fowowe*, 1 F.4th at 529. Then the Court must "calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." *Concepcion v. United States*, 597 U.S. 481, 498 n.6 (2022). After that, the Court may consider other relevant factors, such as post-sentencing conduct, non-retroactive changes in law (such as new case law or changes to the Guidelines), and other relevant information like the defendant's history and characteristics. *Id.*; *Hudson*, 967 F.3d at 611–12. The Seventh Circuit has endorsed using 18 U.S.C. § 3553(a)'s "familiar framework" to assess these remaining factors. *Id.* at 612. The following § 3553(a) factors are most relevant here:

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Hicks does not argue that his statutory penalties change with the retroactive application of the Fair Sentencing Act. Nor could he. It is true that the Act increased the quantity of crack cocaine required to trigger the statutory range of 20 years to life imprisonment from 50 to 280 grams, and the jury found only that Hicks was responsible for 50 grams or more. Fair Sentencing Act § 2; Superseding Indictment at 1–2, 5, 16, 20; 07/03/2012 Minute Entry. But the jury also found Hicks guilty of drug offenses involving 5 kilograms or more of powder cocaine, which triggers (given his prior drug conviction) a statutory range of 20 years to life imprisonment. 21 U.S.C. § 841(b)(1)(A). The Fair Sentencing Act did not change the statutory penalties for this quantity of powder cocaine. *See* Fair Sentencing Act § 2. So even under the Act's revised statutory penalties, Hicks is still subject to a mandatory minimum of 20 years' imprisonment for the cocaine offenses.

Hicks's Guidelines range, too, has not changed. At sentencing, the district court found that the government proved by a preponderance of the evidence that

Hicks was responsible for 44 kilograms of crack cocaine. PSR at 18; 07/03/2012 Tr. at 2:17–3:9. Based on this quantity of crack cocaine, the applicable enhancements, and Hicks's criminal history—none of which Hicks contests now, *see generally* Def.'s Red. Reply—he was subject to a Guidelines range of life imprisonment. PSR at 17–27, 39–40. The Fair Sentencing Act and First Step Act did not alter this calculation. Indeed, an application of the current Guidelines would still result in a recommended term of life imprisonment for Hicks. *See* U.S.S.G. ch. 5, pt. A (calculating a term of life imprisonment for a defendant with an offense level of 43 and a criminal history category of VI).

Rather than rely on changes in the statutory penalties or Guidelines, Hicks argues that he should be granted a sentence reduction based on mitigating factors in his background, his post-conviction rehabilitation, and an intervening judicial decision. Def.'s Red. Reply at 6. The first two issues are covered under § 3553(a), so the Court examines those factors first.

The nature and circumstances of Hicks's offense were gravely serious. Hicks trafficked at least 44 kilograms of crack cocaine and 26 kilograms of powder cocaine. PSR at 18. The enormity of these quantities cannot be understated. Indeed, in a crack cocaine case, the current Guidelines set the highest base offense level possible at 25.2 kilograms or more, U.S.S.G. § 2D1.1(c)(1), and Hicks was responsible for trafficking much more—that is, 44 kilograms of crack cocaine. It goes almost without saying that selling those enormous quantities of crack and powder cocaine caused correspondingly enormous harms to the community. And Hicks was not a low-level participant

in the conspiracy. He *led* the conspiracy, and was thus responsible for all of the drugs trafficked through it. PSR at 20. Indeed, the drugs were purchased, repackaged, and sold at Hicks's direction (and in many cases, he directly obtained and repackaged the drugs himself). 03/24/2010 Tr. at 189:25–192:13, 193:10–194:14; 03/25/2010 Tr. at 316:14–18, 319:13–320:4. What's more, other aspects of the conspiracy enhance the seriousness of the offense. For instance, Hicks ran the conspiracy out of his home and involved minors in it. PSR at 18–19. Thus, a longer sentence is necessary to reflect the seriousness of Hicks's offense, to promote respect for the law, and to provide for just punishment.

Hicks also has an extensive criminal history, including prior convictions for drug offenses, burglary, intimidation, and unlawful use of a weapon. PSR at 22–27. He possessed multiple firearms to protect the conspiracy. *Id.* at 18. He made threats of violence—and directed other members of the conspiracy to threaten violence—against rival drug traffickers. *Id.* Hicks was lawfully employed only for brief periods of time during his adulthood; for the most part, his primary source of income came from drug trafficking. *Id.* at 19. Thus, Hicks had a long history of committing drug and other offenses, and prior periods of incarceration had not stopped him. These facts suggest that a longer sentence is required to specifically deter Hicks, to generally deter others from committing similar crimes, and to protect the public from additional potential crimes committed by Hicks.

Having said that, it is true that Hicks's background and personal characteristics also provide some mitigation. Hicks experienced extreme abuse and neglect as a

child. PSR at 31–33. And Hicks struggles with his mental health. *Id.* at 36. All of that is mitigation. But the previously assigned judge considered these facts at Hicks's sentencing. 07/03/2012 Tr. at 11:12–24. And the prior judge rightly noted that Hicks was re-creating much of the harm that Hicks had experienced as a child—which stemmed from his mother's drug addiction—by trafficking drugs to his community. *Id.*

Ultimately, the Court concludes that the § 3553(a) factors continue to support Hicks's sentence of 30 years' imprisonment. As noted, the previously assigned judge considered these aggravating and mitigating factors—which have not changed since Hicks's sentencing—when imposing the sentence. *See* 07/03/2012 Tr. at 11:12–15:18. To be sure, 30 years is a long sentence. But the statutory and Guidelines ranges suggest that an even longer sentence—life imprisonment—could have been appropriate based on the seriousness of the offense and numerous aggravating factors. So even when taking mitigation into account, a sentence of 25 years for the drug offenses, plus a mandatory consecutive term of five years for the firearm offense, is sufficient but not greater than necessary to achieve the goals of sentencing. The Court declines to grant Hicks a reduced sentence based on his proposed mitigating factors.

Hicks asks the Court to consider his post-conviction rehabilitation. Def.'s Red. Reply at 6. During his incarceration, Hicks has earned his GED; participated in psychological, drug, and health programs; and completed vocational training and various job assignments. *See* R. 1917-2, Def.'s Exh. B, Educ. Materials; R. 1919-1, Def.'s Exh. C, Program Records; R. 1925-1, Def.'s Exh. D, Work Assignments. These are excellent achievements, but they are not uncommon. The Bureau of Prisons awards time

credits for good conduct that count towards a prisoner's sentence. 18 U.S.C. § 3624(b)(1). A prisoner earns more credits if he "has earned or is making satisfactory progress toward earning a GED credential or high school diploma." *See* 28 C.F.R. § 523.20(d)(2) (2025); *see also* 18 U.S.C. § 3624(b)(1). As a result, and not surprisingly, many prisoners participate in these types of programs. *See United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023). Thus, although Hicks's post-conviction rehabilitation is commendable, it does not establish a persuasive mitigating factor when balanced against the extraordinary seriousness of his drug and gun offenses.

Finally, Hicks submitted a supplemental letter to point out a change in law under *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020). R. 2014, Def.'s Red. Suppl. Under 21 U.S.C. § 841(b)(1)(A) at the time of Hicks's sentencing, a defendant who was responsible for five kilograms or more of powder cocaine was ordinarily subject to a mandatory minimum of 10 years, but the minimum increased to 20 years if he had a prior felony drug conviction. The government relied on Hicks's prior felony cocaine convictions under Illinois law to seek this statutory enhancement. R. 239, Info. at 1–2; *see also* 21 U.S.C. § 851(a). But in *Ruth*, the Seventh Circuit held that Illinois cocaine convictions do not qualify as predicate felony drug offenses under the Controlled Substances Act, and thus cannot be used to enhance a defendant's sentence under sections 841 and 851. 966 F.3d at 645–50 (holding that the Illinois cocaine statute is categorically overbroad because it defines cocaine to include "positional isomers," which the federal definition does not). Thus, if Hicks were sentenced after

*Ruth*, he would have been subject to a 10-year mandatory minimum, not a 20-year minimum, for the powder cocaine.

"[T]he First Step Act authorizes but does not require a district court to apply intervening judicial decisions." *Fowowe*, 1 F.4th at 531–32; *see also Concepcion*, 597 at 500. So the Court can, at its discretion, consider *Ruth* when evaluating Hicks's motion under § 3553(a). But *Ruth* does not change the Court's determination that a reduction in Hicks's sentence is unwarranted. True, "the statutory minimum and maximum often anchor a court's choice of a suitable sentence." *Shaw*, 957 F.3d at 742. But the previously assigned judge sentenced Hicks to a greater term of imprisonment than the 20-year mandatory minimum. *See* 07/03/2012 Tr. at 14:6–15:18. And he did not suggest that he would have imposed a shorter sentence had the mandatory minimum been lower. Instead, the judge explained why he was giving a below-Guidelines sentence even though the Guidelines advice called for a life sentence. *See id.* The Court agrees with the previously assigned judge's reasoning and application of the § 3553(a) factors, as just explained. Even if Hicks would have been subject to a lower mandatory minimum under *Ruth*, and even when considered in combination with Hicks's other mitigating circumstances, the Court would not impose a lower sentence given the seriousness of the offense and the need for deterrence, both general and specific. Because the Court declines to exercise its discretion and reduce Hicks's sentence under the First Step Act, his motion is denied.

### B. Compassionate Release

Hicks also moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Def.'s First Comp. Release Mot.; Def.'s Second Comp. Release Mot. That statute authorizes the Court, on a defendant's motion, to modify a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction," and if the modification would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i). The government argues that Hicks did not exhaust his administrative remedies; he has not established extraordinary and compelling reasons to qualify for a reduction; and even if he did qualify, the § 3553(a) factors do not warrant a sentence reduction. Gov.'s Comp. Release Resp. at 8–34. The Court addresses each argument in turn.

#### 1. Exhaustion

Under the compassionate-release statute, a "defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait '30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Sanford*, 986 F.3d 779, 781–82 (7th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The government argues that Hicks did not comply with this exhaustion requirement, Gov.'s Comp. Release Resp. at 8–9, which is mandatory when properly invoked, *Sanford*, 986 F.3d at 782.

But Hicks says that he submitted a request for compassionate release to the warden on October 16, 2023, and did not receive a response. Def.'s Second Comp.

Release Mot. at 3.[5] He attaches the dated letter to his motion. *See* R. 2171, Def.'s Second Comp. Release Mot. at 17–18, 10/16/2023 Letter. Hicks waited over 30 days after sending the letter to file his compassionate-release motion on November 27, 2023. *See id.* at 1. Hicks thus complied with the statute's exhaustion requirement.

**2. Merits**

Turning to the merits of Hicks's motion, the Court proceeds in two steps. "At step one, the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction …." *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). "Upon a finding that the prisoner has supplied such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.* The government argues that Hicks's motion fails at either step. Gov.'s Comp. Release Resp. at 9–34.

**a. Extraordinary and Compelling Reasons**

At the first step, Hicks argues that there are three extraordinary and compelling reasons why his sentence should be reduced: changes in law since his sentencing; medical problems with his shoulder, knee, and eye; and his post-conviction

---

[5]Hicks filed two compassionate-release motions on the same day: one using the model form and the other typed out. *See* Def.'s First Comp. Release Mot.; Def.'s Second Comp. Release Mot. Because Hicks is *pro se*, the Court views his filings expansively and considers them both. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

rehabilitation. Def.'s First Comp. Release Mot. at 3–8. But none of these reasons qualify as "extraordinary and compelling."

First, Hicks identifies several changes in law that have happened since his sentencing. As described previously, the First Step Act retroactively applies the Fair Sentencing Act's change to crack-cocaine statutory penalties. Hicks also notes *Ruth*'s disqualification of his Illinois cocaine convictions as prior felony drug convictions, which would make Hicks subject to "only" a 10-year mandatory minimum (rather than 20 years) for his powder-cocaine offenses under § 841(b)(1)(A). And finally, he points to another provision in the First Step Act that lowered the mandatory minimum from 20 to 15 years for offenses involving 5 kilograms or more of powder cocaine where the defendant has a prior felony drug conviction. First Step Act § 401(a)(2)(A). Even setting aside *Ruth*, if Hicks were sentenced today with a prior felony drug conviction, he still would be subject to a lower mandatory minimum of 15 years. *See* 21 U.S.C. § 841(b)(1)(A).

As discussed for the first motion, the retroactive application of the Fair Sentencing Act does not change Hicks's statutory penalties given his powder-cocaine offenses. *See supra* Section II.A. So that cannot constitute a compelling and extraordinary reason to reduce his sentence. The other two changes in law would reduce Hicks's statutory penalties, but they are nonretroactive. *See Vaughn*, 62 F.4th at 1072 (describing how *Ruth* is not retroactive); *United States v. Jackson*, 940 F.3d 347, 353 (7th Cir. 2019) (describing how § 401 of the First Step Act is not retroactive). The

question, then, is whether these nonretroactive changes in law can constitute compelling and extraordinary reasons warranting a sentence reduction.

Congress directed the U.S. Sentencing Commission to promulgate policy statements regarding compassionate release, including a description of "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(a)(2)(C), (t). In 2022, the Commission promulgated an amended policy statement. *See* U.S.S.G. § 1B1.13. Under the amended policy statement, if

> a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* § 1B1.13(b)(6). Hicks argues that nonretroactive changes in law can constitute extraordinary and compelling reasons based on the amended policy statement. R. 2187, Def.'s Comp. Release Reply at 3–6.

But the Supreme Court recently held that nonretroactive amendments to sentencing statutes are not extraordinary and compelling reasons—and to the extent the Commission's policy statement says otherwise, it is invalid. *Rutherford v. United States*, 608 U.S. —, 146 S. Ct. 1320, 1330–35 (2026). The Supreme Court explained how "nonretroactive amendments to criminal penalties are the norm," not extraordinary. *Id.* at 1330. Instead, the "heartland of compassionate release … has long been

defined by a prisoner's personal circumstances," such as their medical conditions, age, and family circumstances. *Id.* at 1331. The Seventh Circuit has similarly explained that the compassionate-release statute cannot be used to raise sentencing challenges—like the overbreadth challenge to the Illinois cocaine statute that the Seventh Circuit adopted in *Ruth*—that could have been advanced on direct appeal. *See United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022) ("*Ruth* … cannot alone constitute an 'extraordinary and compelling' reason authorizing a reduced sentence under § 3582(c)(1)(A)."). Thus, Hicks's first argument fails because nonretroactive changes in law cannot constitute extraordinary and compelling reasons for a sentence reduction.

Second, Hicks argues that medical problems with his shoulder, knee, and eye are extraordinary and compelling. On medical conditions, the Commission's policy statement provides that an extraordinary and compelling reason exists when "[t]he defendant is … suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he … is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Hicks says that he needs left knee and right shoulder replacements. Def.'s First Comp. Release Mot. at 7. His medical records indicate that he is missing the cartilage on his left tibia, causing pain from bone-to-bone rubbing in the knee. R. 2171, Def.'s Second Comp. Release Mot. at 5, 05/18/2018 Health Note. Hicks also lost sight in his right eye before he was convicted and sentenced in this case. Def.'s First Comp. Release Mot. at 7; *see* PSR at 35–36 (describing how Hicks

lost his right-eye vision in 1991). Hicks says that these ailments cause him pain and significantly limit his mobility. Def.'s Comp. Release Reply at 3; R. 2187, Def.'s Comp. Release Reply at 16–18, Exh. A, Hicks Affidavit.

But the medical records supplied by Hicks show that he is receiving treatment for these conditions. An orthopedist reviewed images of Hicks's knee and recommended an injection to treat it. 05/18/2018 Health Note. Hicks has also received an anti-inflammatory drug and pain medication. R. 2171, Def.'s Second Comp. Release Mot. at 6, 09/11/2018 Health Note. Hicks contends that the Bureau has stopped providing him with pain medication and that it will not provide him with necessary corrective surgery. Def.'s Comp. Release Reply at 3; Hicks Affidavit. But a compassionate-release motion is not the proper vehicle to challenge allegedly inadequate medical care. *See United States v. Bridgewater*, 995 F.3d 591, 599 (7th Cir. 2021).

The Court has no doubt that Hicks's physical conditions are painful, and that they make prison life difficult. But Hicks does not show that they substantially interfere with his ability to provide self-care. He thus fails to show that these medical conditions are extraordinary and compelling. *See United States v. Garza*, 2025 WL 1658684, at *3 (N.D. Ind. June 11, 2025) (denying compassionate-release motion for "medical conditions [that] are controlled and managed with medication … provided by the [prison]"); *see United States v. Wilks*, 2024 WL 4057596, at *5–6 (S.D. Ill. Sep. 5, 2024) (denying compassionate-release motion because the movant's medical conditions do not interfere with his ability to provide self-care, the Bureau of Prisons has provided care, and the conditions were known at the time of sentencing and have not

substantially worsened). Even when considered with the proffered changes in law (to the extent that those changes are viable qualifying reasons), Hicks's medical conditions do not cross the extraordinary-and-compelling threshold

Third, Hicks again proffers his post-conviction rehabilitation. Def.'s First Comp. Release Mot. at 7–8. But Hicks has offered no other extraordinary and compelling reasons. And "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022). So rehabilitation alone cannot qualify Hicks for compassionate release at the first step.

**b. Section 3553(a) Factors**

Hicks's failure to identify any extraordinary and compelling reasons for a sentence reduction dooms his compassionate-release motion. But even if Hicks succeeded at the first step of the analysis, he would fail at the second. As described earlier in this Opinion, the § 3553(a) sentencing factors do not favor a sentence reduction. *See supra* Section II.A. Yes, Hicks's physical ailments are an additional mitigating factor, as they surely make prison life harder. But again, given the seriousness of the offense and various aggravating factors discussed above, the § 3553(a) factors do not justify a sentence reduction. Hicks's sentence of 25 years for the drug offenses and 5 years for the firearm offense is sufficient but not greater than necessary to achieve the goals of sentencing. The Court thus would deny Hicks's compassionate-release motion at the second step, too.

### III. Conclusion

The motions to reduce Hicks's sentence, R. 1895, and for compassionate release, R. 2170; R. 2171, are denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 28, 2026